889 F.2d 1084
 11 Employee Benefits Ca 2068
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Robert P. MURPHY, Robert P. Murphy, D.D.S., P.A. Profit
Sharing Plan, Plaintiffs-Appellees,
v.
Glen E. DAWSON, Chesapeake Pension Consultants, Inc.,
Defendants-Appellants,
and
Severn Investment Advisors, Inc., Defendant.
 No. 88-2992.
 United States Court of Appeals, Fourth Circuit.
 Nov. 2, 1989.
 
 David Drake Hudgins (Douglas McNeil Coleman, Cunningham & Hudgins, on brief) for appellant.
 Robert James Parsons, II (William C. Rogers, Jr., Rogers, Moore & Rogers, Richard H. Lerch, Lerch & Huesman, on brief) for appellee.
 Before MURNAGHAN, SPROUSE, and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is an appeal by Glen E. Dawson and Chesapeake Pension Consultants, Inc. (CPC)[1] from a judgment of the district court entered after a bench trial holding that Dawson and CPC violated sections 1104 and 1106 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. Secs. 1001 et seq. (ERISA), and awarding damages in the amount of $61,500 plus attorney fees and costs to the plaintiff Robert P. Murphy. We affirm.
 
 
 2
 Murphy is a dentist, practicing in Glen Burnie, Maryland, who in late 1976 employed Dawson, president of CPC, to design a retirement or pension plan (the Plan) for himself, his wife, and his employees. Murphy's share in the Plan was approximately ninety percent. At his instruction, Murphy was designated as trustee, but CPC was named administrator and Dawson agreed to be an investment advisor.
 
 
 3
 Murphy contributed to the Plan from the income of his practice, and invested the funds in various securities suggested by Dawson. Those investments are not involved in this appeal. Dawson also recommended two high-risk, high-yield real estate loans secured by second mortgages. The loss suffered as a result of the second real estate loan forms the basis of this litigation. Prior to making that loan, the Plan, on Dawson's recommendation, made a similar real estate loan to one Teeter at an interest rate of 24%. Although Teeter defaulted on the loan, the Plan recovered its investment and interest. After that, however, Dawson recommended the loan that resulted in the loss which is the subject of this litigation. Upon Dawson's recommendations, the Plan loaned Roy E. Hedrick $55,000 at 24% annual interest to finance a real estate development project. The loan was secured by a second mortgage on Hedrick's residence.
 
 
 4
 In recommending the loan to Murphy, Dawson provided an appraisal indicating that Hedrick's residence had a fair market value of $224,000. There was a first lien against it in the amount of $77,000. The appraisal was obtained by the borrower, Hedrick. Dawson, prior to recommending the loan, ran no check concerning the soundness of the borrower's credit and had no independent appraisal conducted, nor did he otherwise investigate the risk presented by the loan. Dawson relied solely on the appraisal given him by Hedrick.
 
 
 5
 From the $55,000 loan Hedrick paid a fee of $10,700 to Severn Investment Advisors, Inc. (Severn) for their services in obtaining the Plan funding of the loan. At least part of that money was deposited in the bank account of CPC. CPC had been formed by Dawson some time prior to formation of the Plan. He was president and one of its directors and received compensation from it. Severn had been previously organized by one of CPC's employees at Dawson's direction, and was utilized for placing money in second mortgages from funds that came from Dawson's pension clients. The funds collected by Severn were deposited in CPC's bank account. Dawson was its resident agent and served on its board of directors. Murphy had no knowledge of Severn's existence nor was he aware that CPC and Severn received origination fees from the real estate loans. The district court found that Dawson "ran the show" both at CPC and at Severn. It also found that Severn was a sham corporation, formed to cover the fact that CPC was receiving commissions from the Plan-financed loans.
 
 
 6
 The trial court found that Dawson violated section 1106 of ERISA (the prohibited transactions section) by manipulating the commission from Hedrick to Severn and CPC. It also found that Dawson was negligent in not obtaining an independent appraisal of the Hedrick property and in failing to investigate Hedrick's stability as a credit risk in violation of section 1104 of ERISA (the prudent man rule). The court ordered the defendants to return $4,000, representing the fees CPC improperly received, and awarded damages in the amount of $61,500, including interest. The court also awarded $25,000 in attorney fees and $7,500 in costs--in all totaling $94,000.
 
 
 7
 On appeal, Dawson and CPC (henceforth Dawson) contend that the trial court erred by impermissibly merging its finding of intentional misconduct and its finding of negligence. Dawson also contends that Murphy as trustee had ultimate control over the investments and should have been held either solely or jointly liable for the damages resulting from acceptance of the recommendation to invest in Hedrick's loan. Dawson also contends that the trial court abused its discretion in awarding attorney fees because it did not articulate its reasons for the award.
 
 
 8
 We find no error in the trial court's liability findings. Despite Dawson's contentions, we are persuaded that the trial court's findings were consistent, considering the different conduct intended to be regulated by sections 1104 and 1106. The prohibited transaction violation found by the court resulted from intentional misconduct, whereas the prudent man rule violation was grounded on negligence. The district court made sufficient findings to support its decision that Dawson violated ERISA in both respects.
 
 
 9
 Likewise, we find no merit to Dawson's argument that the fact of Murphy's authority to disapprove investment recommendations relieved Dawson of liability for his misconduct. Dawson was a fiduciary specifically employed to investigate and recommend investment opportunities. The fact that Murphy as a co-fiduciary relied on Dawson's judgment made within the sphere of those responsibilities does not relieve Dawson from liability to his co-fiduciary for the intentional acts of deceit found by the district court.
 
 
 10
 We agree with Dawson, however, that the district court failed adequately to articulate the basis for its award of attorney fees. The trial court, in making its award, discussed its reasoning generally, but it did not set out the specific findings which we have required in previous cases. See generally Lilly v. Harris-Teeter Supermarket, 842 F.2d 1496, 1511 (4th Cir.1988). Rather, the court simply indicated that it thought $25,000 "would be appropriate" given the length of the case and the type of motions and discovery involved. As we have stated many times, conclusory findings are insufficient to support an award of attorney fees, and the district court's award in this case was not based sufficiently on the specific factors which must be considered and articulated before awarding attorney fees in this circuit. See id. at 1510-11; see also Hensley v. Eckerhart, 461 U.S. 424, 433-40 (1983); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974).
 
 
 11
 In view of the above, the judgment of the district court is affirmed insofar as it awarded Murphy $4,000 representing the return of fees received by Dawson, $61,500 in damages including interest, and $7,500 in costs. The case is remanded to the district court for an award of attorney fees based on appropriate findings.
 
 
 12
 AFFIRMED IN PART AND REMANDED IN PART WITH INSTRUCTIONS.
 
 
 
 [1]
 Severn Investment Advisors, Inc., which also was a defendant, does not appeal